## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY BANK OF AMERICA MERRILL LYNCH TRUST 2013-C10, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2013-C10,** | |
| **PLAINTIFF,** | |
| **VS.** | |
| **262 EAST FORDHAM REALTY LLC, HAIM CHERA, EVOLUTION ELEVATOR & ESCALATOR CORP., AND "JOHN DOE" NOS. 1-25,** | CIVIL ACTION NO. _____ |
| **DEFENDANTS.** | |
| **THE NAMES OF THE "JOHN DOE" DEFENDANTS BEING FICTITIOUS AND UNKNOWN TO PLAINTIFF, THE PERSONS AND ENTITIES INTENDED BEING THOSE WHO HAVE POSSESSORY LIENS OR OTHER INTERESTS IN, THE PREMISES HEREIN DESCRIBED.** | |

## VERIFIED COMPLAINT

U.S. Bank National Association, as Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2013-C10, Commercial Mortgage Pass-Through Certificates, Series 2013-C10 ("Plaintiff" or "Trust" or "Lender") by and through its attorneys, Perkins Coie LLP, for its Verified Complaint (the "Complaint") against the defendants, respectfully alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      U.S. Bank National Association ("U.S. Bank") is a national banking association with its main office location in Cincinnati, Ohio. The trustee actively managing the trust is a citizen of Ohio.

2.      U.S. Bank is the duly appointed and presently serving Trustee under the trust created under the pooling and servicing agreement governing the acquisition and administration of a pool of mortgage loans, of which the loan that is the subject of this action is one.

3.      U.S. Bank, as the lawful holder and owner of the note, mortgage and security interest being foreclosed therein, brings this action as plaintiff.

4.      262 East Fordham Realty LLC ("Borrower") is a limited liability company formed and existing under and by virtue of the laws of the State of New York, having a principal place of business at c/o Crown Acquisitions, Inc., 767 Fifth Avenue 24th Floor, New York, New York 10153. All of the members of Borrower are individual citizens of New York or limited liability companies whose members in turn are individual citizens of New York, and thus Borrower is a citizen of the State of New York only.

5.      Borrower is, and at all relevant times hereinafter mentioned was, the owner of certain real property located at: 262 East Fordham Road, Bronx, New York 10458 in the County of Bronx, State of New York, as more specifically described in Schedule A annexed hereto, together with the buildings, improvements, fixtures, machinery, equipment, personalty and other rights or interests of any kind or nature owned or held by them (collectively, the "Mortgaged Property"). The Mortgaged Property is identified on the tax map of Bronx County as Section 11 Block 3148 Lot 20.

6.     Haim Chera, an individual citizen of New York having an address at c/o Crown Acquisitions, Inc., 767 Fifth Avenue, 24th Floor, New York, New York 10153 (the "Guarantor") is made a party defendant by reason of each having executed and delivered to Morgan Stanley Mortgage Capital Holdings LLC, a New York limited liability company, having an address at 1585 Broadway, 10th Floor, New York, NY 10036 ("Original Lender"), a written guaranty of recourse obligations of Borrower (described more particularly below) in connection with the loan, note and mortgage at issue in this action and for the purpose of adjudicating any deficiency under the subject mortgage for which Guarantor may be liable.

7.     Evolution Elevator & Escalator Corp. ("Evolution Elevator") is a New York corporation that maintains its headquarters at 449 Craig Avenue, Staten Island, NY 10307. Evolution Elevator is made a party defendant as a judgment creditor of the Mortgaged Property by reason of the judgment(s) described on Schedule B attached hereto.  Evolution Elevator is the holder of a lien or liens on account of those judgment liens, if any, against Borrower, as described on Schedule B, which liens are subject and subordinate to the lien of the mortgage being foreclosed herein.  Evolution Elevator is made a party defendant herein solely for the purpose of foreclosing those liens, if any, against the Mortgaged Property which accrued, or may accrue, subsequent to the lien of mortgage being foreclosed herein by virtue of such judgment liens which are or may be due or which become due to Evolution Elevator from any owner of record of the Mortgaged Property.

8.     The "John Doe" defendants constitute tenants, occupants or other persons and entities who may be in possession of, or may have possessory liens or other interests in, the Mortgaged Property and which possessory liens or other interests, if any, are subsequent and/or subordinate to the mortgages being foreclosed herein. Said defendants are named as party

defendants herein for the purpose of terminating their interests.  Upon information and belief, no "John Doe" defendant is a citizen of the State of Ohio.

9.     This dispute arises between citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  Therefore, this Court has diversity-of-citizenship jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

**A.     The Loans**

11.     On or about April 18, 2013, Original Lender agreed to make a loan or loans (the "Loan") to Borrower, in accordance with the terms and conditions of that certain loan agreement (the "Loan Agreement") dated April 18, 2013.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit A.

12.     The Loan is in part evidenced by that certain Consolidated, Amended and Restated Promissory Note dated April 18, 2013 (the "Note") in the original principal amount of Twelve Million Two Hundred Fifty Thousand and 00/100 Dollars ($12,250,000.00) executed by Borrower in favor of Original Lender.  A true copy of the Note together with an allonge described herein is annexed hereto as Exhibit B and its terms are expressly incorporated herein by reference and made part hereof as though fully and completely set forth herein.  All documents evidencing or security for the Loan, including those set forth herein, shall be collectively referred to as the "Loan Documents."

13.     As security for the payment of the Loan, on or about April 18, 2013, Borrower executed and delivered to Original Lender that certain Consolidated, Amended and Restated

Mortgage, Assignment of Leases and Rents and Security Agreement dated April 18, 2013 (the "Mortgage") securing the obligations under the Note.

14.     The Mortgage was recorded in the New York Office of the City Register on July 10, 2013, CRFN 2013000272917.

15.     The Mortgage encumbers that certain real property described therein (all property given as security thereunder, the "Property"). A true copy of the Mortgage evidencing a first priority lien is annexed hereto as Exhibit C and its terms are expressly incorporated herein by reference and made part hereof as though fully and completely set forth herein.

16.     In addition to being a real property mortgage, the Mortgage is a "security agreement" within the meaning of the Uniform Commercial Code.  Section 1.3 of the Mortgage provides that the Mortgage is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified in Sections 1.1(a) through 1.1(q) of the Mortgage which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and under that section Borrower granted to Original Lender a security interest in said items.

**B.     Assignments of Loan Documents**

17.     As additional security for the payment of the Loan, on or about April 18, 2013, Mortgagor executed and delivered to Original Lender, an Assignment of Leases and Rents securing the obligations under the Note (the "Assignment of Rents").  A true copy of the Assignment of Rents is annexed hereto as Exhibit D and its terms are expressly incorporated herein by reference and made part hereof as though fully and completely set forth herein.

18.     The Assignment of Rents was duly recorded in the New York Office of the City Register on July 10, 2013, CRFN 2013000272918.

19.     As further security for the payment of the Loan, on or about April 18, 2013, Guarantor executed and delivered to Original Lender, a Guaranty of Recourse Obligations of Borrower guaranteeing the payment of certain obligations under the Loan Documents (the "Guaranty").  A true copy of the Guaranty is annexed hereto as Exhibit E and its terms are expressly incorporated herein by reference and made part hereof as though fully and completely set forth herein.

20.     Borrower also executed and delivered to Original Lender that certain Cash Management Agreement dated April 18, 2013.  The Cash Management Agreement, provides for, *inter alia*, security interests in and control over cash proceeds of the Borrower's operations on the terms and conditions set forth therein.  A true copy of the Cash Management Agreement is annexed hereto as Exhibit F and its terms are expressly incorporated herein by reference and made part hereof as though fully and completely set forth herein.

21.     As further security for the payment of the Loan, on or about April 18, 2013, Borrower and Guarantor executed and delivered to Original Lender, that certain Environmental Indemnity Agreement indemnifying Original Lender with respect to certain environmental representations, warranties and covenants with respect to certain obligations under the Loan Documents (the "Environmental Indemnity Agreement").  A true copy of the Environmental Indemnity Agreement is annexed hereto as Exhibit G and its terms are expressly incorporated herein by reference and made part hereof as though fully and completely set forth herein.

22.     Effective as of August 6, 2013 the Loan, the Note, the Mortgage and the Assignment of Rents were assigned to the Trust through execution and delivery of the Original Lender Assignments (defined in this paragraph below).  An allonge to the Note in favor of the Trust was executed and delivered from Original Lender to the Trust.  A true and correct copy of

that allonge to the Note by which the Note was transferred to the Trust is attached to the Note as Exhibit B as described above.  Copies of the Omnibus Assignment, Assignment of Mortgage by Original Lender (the "Original Lender Assignment of Mortgage") dated as of August 6, 2013 and recorded March 21, 2014 in the Office of the New York City Register, as CRFN 2014000098720, and the substantially contemporaneous Assignment of the Assignment of Leases and Rents executed and delivered to the Trust and dated as of August 6, 2013 and recorded March 21, 2014 in the Office of the New York City Register, as CRFN 2014000098721 (the "Original Lender Assignment of Assignment of Leases"; together with the Original Lender Assignment of Mortgage, the "Original Lender Assignments") are annexed hereto as Exhibit H.

23.    The Original Lender Assignment of Mortgage was duly recorded in the real estate records of Office of the Clerk for New York County, New York as set forth above and the recording fee was duly paid.

24.    On May 7, 2013, a UCC-1 Financing Statement was filed as to Borrower with the New York Department of State at file number 201305070250824 (the "Original State UCC"), and on July 20, 2013 a UCC-3 Assignment of Financing Statement at file number 201307208296173 (the "State UCC Assignment"; together with the Original State UCC, the "State UCC Documents") was filed with the New York Department of State, whereby the Original State UCC was assigned to Lender. True and correct copies of the State UCC Documents are attached hereto as Exhibit I.  The State UCC Documents cover the personal property assets of the Borrower.

25.    On July 10, 2013, a UCC-1 Financing Statement was filed as to Borrower with Bronx County, New York at file number 2013050100929007 (the "Original Bronx UCC"), and on March 21, 2014, a UCC-3 Assignment of Financing Statement at file number

2014022800454003 (the "Bronx UCC Assignment"; together with the Original Bronx UCC, "the Bronx UCC Documents") was filed with Bronx County, New York, whereby the Original Bronx UCC was assigned to Lender. The Bronx UCC Documents are attached hereto as Exhibit J.  The Bronx UCC Documents cover the personal property assets of the Borrower.

26.     The Loan, the Loan Agreement, the Note, Mortgage, the Assignment of Rents, the Cash Management Agreement, the Guaranty, the Environmental Indemnity Agreement, the Original Lender Assignments and all other instruments or documents evidencing or securing the obligations of Borrower under the Note and/or any other loan document are collectively referred to herein as the "Loan Documents."

## C.     Provisions Common to the Loan Agreement, Note, and Mortgage

27.     At all times prior to default, Borrower was obligated to pay each month through the Maturity Date of May 1, 2023, on the Monthly Payment Date (the first calendar day of each month, or, if such first day is not a Business Day as defined in the Loan Agreement, the next day prior to the first of the month that is not a Business Day), the amount equal to the Monthly Debt Service Payment Amount, a constant monthly amount of $59,334.01.  On the Maturity Date, all outstanding principal and all accrued and unpaid interest and all other amounts due under the Loan Agreement, the Note, the Mortgage and the other Loan Documents, including, without limitation, all interest that would accrue on the Note through and including the end of the Interest Period in which the Maturity Date occurs (even if such Interest Period extends beyond the Maturity Date) (the "Maturity Date Amount").

28.     At all times prior to default, Borrower was obligated to pay interest at a constant rate of 4.12% (the "Interest Rate") per annum on the outstanding principal amounts under the

Loan Agreement.  See Exs. A and B (Note at Article I and Loan Agreement at Sections 2.2.1 and 1.1 (the latter includes the definition of Interest Rate)).

29.     The interest on the principal sum of the Note is "calculated by multiplying (a) the actual number of days elapsed in the period for which the calculation is being made by (b) a daily rate based on a three hundred sixty (360) day year (that is, the Interest Rate or the Default Rate, as then applicable, expressed as an annual rate divided by 360) by (c) the outstanding principal balance.  The accrual period for calculating interest due on each Monthly Payment Date shall be the month immediately prior to such Monthly Payment Date."  See Ex. A (Loan Agreement at Section 2.2.3).

30.     The "Default Rate" is defined in the Loan Agreement as "a rate per annum equal to the lesser of (i) the maximum rate permitted by applicable law, or (ii) five percent (5%) above the Interest Rate."  Thus, the Default Rate is 9.12% per annum.  It shall be "calculated from the date the Default occurred which led to such an Event of Default without regard to any grace or cure periods contained herein."  See Ex. A (Loan Agreement at Section 1.1).

31.     The Mortgage provides in Section 7.1(g) that, upon the occurrence of an Event of Default, the mortgagee (here, Plaintiff) may apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with respect to the Loan or any Person liable for the payment of the Debt any part thereof.

32.     In addition, upon a Cash Management Sweep Period (which commences, *inter alia*, upon the occurrence of an Event of Default), the lender under the Cash Management Agreement is afforded additional protections and rights with respect to the Borrower's cash

proceeds.  These include the ability to retain in a subaccount (subject to a perfected lien in favor of the Trust) all income from the Mortgaged Property after payment of monthly tax and insurance escrows, default interest, regular payments or principal and interest that would be due absent acceleration and cash management account fees.

**D.     Guaranty**

33.     Pursuant to the Guaranty, Guarantor absolutely and unconditionally guaranteed to Plaintiff the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower (as defined in the Guaranty), which include, among other things, liabilities, costs, losses, damages, expenses or claims suffered or incurred by Plaintiff by reason of or in connection with any of the events or circumstances described in Section 11.22 of the Loan Agreement.  In addition, the Guarantor under the Guaranty is liable for all legal fees and other costs and expenses incurred by the lender under the Note in enforcing any of the Guaranteed Recourse Obligations of Borrower.

**E.     Defaults Under the Loan Documents**

34.     Borrower failed to pay the Maturity Date Amount due on May 1, 2023, an Event of Default.  Accordingly, the Loan is and has been bearing interest at the Default Interest Rate since then.  Plaintiff provided written notice of Borrower's default to Borrower and Guarantor by letter dated May 10, 2023 (the "Default Letter").  A true and correct copy of the Default Letter is annexed hereto as Exhibit K.

35.     However, rather than rectify the Event of Default, Borrower has compounded the defaults.

36.     First, a Cash Management Sweep Period has been in effect since August 2021, when the Debtor failed to satisfy the minimum debt service coverage ratio of 1.15 to 1 for the

quarter ending September 30, 2020.  Since then, Borrower has been required to deposit all revenues from the Mortgaged Property with Lender.  Borrower has not deposited any such funds since February 2023. Borrower's failure to deposit any funds since February 2023 is an additional Event of Default under the Loan Agreement.

37.     Borrower thus appears to be diverting the revenues of the Mortgaged Property. Lender has a lien and security interest in, to and upon those funds.  Those funds are at risk of dissipation, potentially irreparably harming Lender's lien and security interest in them.

38.     By reason of the foregoing, as of July 13, 2023, and assuming no further payment by Borrower or anyone else on account of the Loan, there is justly due and owing to Plaintiff, upon the Mortgage, the outstanding principal balance of $10,582,162.24, together with accrued and unpaid interest thereon, at the Default Interest Rate from and after the first occurrence of the first Event of Default since the Reinstatement Agreement (which commenced on the date that the Borrower received the erroneous distribution the portion of the cash management waterfall sum described above, and in any event commenced not later than May 2023, the date following the Maturity Date), and all other charges as more fully provided in the Loan Documents, which sums are due and owing in additional to any usual costs and allowance to which Plaintiff may be entitled to and awarded under any law or statute applicable to this action.

39.     In order to protect its security interest, Plaintiff may be compelled to pay during the pendency of this action, among other things, taxes, assessments, water rates, insurance premiums and other charges affecting the Mortgaged Property, and Plaintiff requests that any sums thus paid by it for said purposes (together with interest thereon) be added to the sum otherwise due and be deeded secured by the Mortgage and be adjudged a valid lien on the Mortgaged Property.

40.     Upon information and belief, all of the defendants named in this action have, or claim to have, some claim to, interest in or lien upon the Mortgaged Property or some part thereof, which claim, interest or lien, if any, has accrued subsequent to the Mortgage and to the liens of Plaintiff and is subject and subordinate to the liens of Plaintiff.

41.     Upon information and belief, no persons or entities other than those described herein have, may have, or claim to have, any interest in and lien upon the Mortgaged Property.

**F.      Lender's Remedies under the Loan Documents**

42.     The Mortgage provides in Section 7.1(g) that, upon the occurrence of an Event of Default, the mortgagee (here, Plaintiff) may apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with respect to the Loan or any Person liable for the payment of the Debt any part thereof.

43.     In addition, upon a Cash Management Sweep Period (which commences, *inter alia*, upon the occurrence of an Event of Default), the lender under the Cash Management Agreement is afforded additional protections and rights with respect to the Borrower's cash proceeds.  These include the ability to retain in a subaccount (subject to a perfected lien in favor of the Trust) all income from the Mortgaged Property after payment of monthly tax and insurance escrows, default interest, regular payments or principal and interest that would be due absent acceleration and cash management account fees.

## COUNT I
### (Foreclosure on the 262 East Fordham Realty LLC Mortgage)

44.    The Lender re-alleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 46 of this Complaint.

45.    The Lender and each of the Defendants are parties to the Loan Documents, under which the Defendants have agreed to perform various obligations, including payment of the indebtedness pursuant to the terms of the Notes.

46.    The Defendants have failed to pay their indebtedness to the Lender in accordance with the terms of the Loan Documents.

47.    The Defendants' failure to pay such indebtedness constitutes a breach of the Loan Documents.  Specifically, 262 East Fordham Realty LLC's failure to pay such indebtedness constitutes a breach of its Loan Documents.

48.    As a result, the Lender is entitled to a judgment (a) barring and forever foreclosing 262 East Fordham LLC, the other Defendants, and all persons claiming by, through or under all or any of them, any and all mechanic's lien holders, all subsequent and subordinate lien and/or judgment holders, and every person or entity whose right, title, conveyance or encumbrance is recorded subsequent to the filing of a notice of pendency of this action of all right, title, interest, claim, lien and equity of redemption in and to the Mortgaged Property and in and to the fixtures and articles of personalty upon which the Mortgage are liens attached to or used in connection with said premises..

## COUNT II
### (Foreclosure on UCC Security Interests)

49.    The Lender re-alleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 51 of this Complaint.

50.     The Lender and each of the Defendants are parties to the Loan Documents, under which the Defendants have agreed to perform various obligations, including payment of the indebtedness pursuant to the terms of the Note. The Borrower continues to be in default under the Loan Documents, including but not limited to, the defaults set forth above.

51.     Pursuant to Section 9-601(1)(a) of the Uniform Commercial Code, the Lender has the right to foreclose upon all personal property encumbered by any security interest in favor of the Lender under the Loan Documents (the "Collateral") by reason of the default described above.

### COUNT III
### (Appointment of a Receiver)

52.     Lender re-alleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 54 of this Complaint.

53.     The real and personal property of Borrower in which Plaintiff holds a lien or security interest (the "Assets") are the sole assets of the Borrower.

54.

55.     The failure to make the payments due under the Loan Documents are events of default under the Loan Documents, including the Note and Assignment of Rents.

56.     The Loan Documents expressly allow the Lender to seek the appointment of a receiver to take possession of and hold the Assets upon the occurrence of an event of default and in the discretion of this Court.  The Borrower consented to the appointment of a receiver under the Loan Documents.

57.     The Defendants' licenses to collect leases and rents under the Assignments of Rents have terminated on account of the breach of the Loan Documents.

58.     For these reasons, in accordance with Rule 66 of the Federal Rules of Civil Procedure, the Lender is entitled to the appointment of a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Defendants' Assets.

## COUNT IV

### (Judgement Against Guarantor)

59.     The Lender re-alleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 61 of this Complaint.

60.     The Borrower has failed to comply with the terms and provisions of the Loan Documents.

61.     To the extent that investigation may reveal that Guarantor has incurred Guaranteed Recourse Obligations of Borrower and a foreclosure sale of the Mortgaged Property does not result in payment of all sums owing to Plaintiff under the Loan Documents, Borrower and Guarantor will be personally liable for all Obligations under the Loan Documents.

62.     Accordingly, Plaintiff requests judgment against defendants, for any losses or damages suffered or incurred by Plaintiff to the extent permitted by the Loan Documents, including the Guaranty, and the applicable law.

### PRAYER FOR RELIEF

The Lender requests that the Court grant the relief requested above and such other and further relief, both at law and in equity, to which it may be justly entitled.  Specifically, the Lender requests that the Court:

a.  bar and forever foreclose 262 East Fordham Realty LLC, and all persons claiming by, through or under all or any of them, and every person or entity whose right, title,

conveyance or encumbrance is recorded subsequent to the filing of a notice of pendency of this action in the, of all right, title, interest, claim, lien and equity of redemption in and to the property subject to its Note and in and to the fixtures and articles of personalty upon which the liens attached to or used in connection with said premises;

      b.   decree that the property subject to 262 East Fordham Realty LLC's Mortgage be sold as one parcel pursuant to the Mortgage, along with the fixtures and articles of personalty, and that the monies arising from such sale be brought into Court;

      c.   direct 262 East Fordham Realty LLC to pay the Lender the amounts due upon its Loan Documents, with interest thereon to the time of such payment, together with the expenses of the sale, the costs, allowances and disbursements of this action, the Lender's attorneys' fees, other charges, any monies advanced or paid to protect its liens, and the taxes, assessments, water charges and sewer rents, premiums for insurance, repairs to the property subject to 262 East Fordham Realty LLC's Security Instrument and all other charges which may have been made by the Lender to protect the security afforded under 262 East Fordham Realty LLC's Security Instrument and the lien thereon to be paid, with interest upon said amounts from the dates of the respective payments and advances thereof, so far as the amounts of such monies properly applicable thereto will pay the same;

      d.   direct 262 East Fordham Realty LLC to pay the Lender all rents as they become due and payable;

      e.   direct the referee (or other officer) making such sale to pay from the proceeds thereof all taxes, assessments, water rates, sewer rents and other charges which are liens on the property sold; and

f.   adjudge that the collateral (that is not real property) subject to the Loan Documents be sold together with the real property subject to the Security Instrument at a single public sale conducted by the sheriff or referee to satisfy the amounts due to the Lender;

g.   bar and foreclose 262 East Fordham Realty LLC of all equity of redemption in and to the aforesaid collateral;

h.   appoint a receiver to take possession and control of and hold the Defendants' Assets;

i.   order the Defendants and their agents charged with operating and/or managing the Mortgaged Property to (i) promptly render an accounting for all rents and other income from the Mortgaged Property from and after February 1, 2023; and (ii) provide all such information and reports concerning the ownership, use, operation, management, repair, maintenance and leasing of the Mortgaged Property as may be required by this Court to provide the receiver appointed by this Court with the information necessary to perform its obligations as receiver of the Defendants' property;

j.   direct the receiver to segregate, preserve, protect, collect and account for, and manage, operate, lease, maintain and preserve, the Defendants' Assets;

k.   compel the Defendants to promptly pay over to the receiver and cause the Defendants' affiliates (i) all deposits by tenants of all rents, revenues and other income from the Mortgaged Property, and all other funds which are Assets in their possession or control; and (ii) all such deposits, rents, revenue and other income from the Mortgaged Property and other funds which are Assets that are received by any of them from and after the appointment of the receiver;

l.   direct the receiver to pay to the Lender on a monthly basis any income and revenue from the Assets in excess of that amount reasonably required to manage, operate, lease, maintain and preserve the Mortgaged Property and other Assets;

m. authorize the Lender, at its sole election, to (i) make such advances to the receiver for the benefit and account of the Defendants under the Loan Documents as may be necessary from time to time, in the exercise of the Lender's sole discretion; and (ii) pay costs and expenses reasonably required to manage, operate, lease, maintain and preserve the Defendants' Mortgaged Property to the extent that rents, income and other revenue from the Defendants' Assets are insufficient to pay such costs and expenses, all without the Lender becoming a mortgagee in possession or incurring any other liability to the Defendants;

n.   permit any such advances made by the Lender pursuant to the foregoing paragraph m of this prayer to be additional indebtedness which will be owed to the Lender under the Note and secured by the other Loan Documents;

o.   authorize the Lender to commence and consummate, without further order of this Court, judicial and non-judicial foreclosure proceedings against all or any part of the Mortgaged Property and other Assets and that the receiver be discharged immediately if and when the sale of all of the Mortgaged Property and other Assets is consummated;

p.   authorize the receiver, upon request by the Lender, to list or otherwise advertise for sale and to solicit offers to purchase the Mortgaged Property and other Assets and to sell Mortgaged Property and other Assets, on such terms as are acceptable and approved in writing prior to such sale by the Lender, by way of public or private sale or other disposition in accordance with the applicable provisions of 28 U.S.C. § 2001 and 2004, free and clear of all

security interests, liens, claims and other interests with all valid security interests and liens to attach to the proceeds of such sale(s);

       q.  tax all costs of this action to the Defendants; and

       r.  award such other and further relief as is just and proper.

Dated: New York, New York
       July 18, 2023

**PERKINS COIE LLP**

By:  /s/ *Gary F. Eisenberg*
      Gary F. Eisenberg, Esq.

      1155 Avenue of the Americas
      22nd Floor
      New York, NY 10036
      212.262.6900
      *Attorney for Plaintiff*

**VERIFICATION**

STATE OF NEW YORK   )
                         ) SS.:
COUNTY OF NEW YORK   )

      Cody Hilke, being duly sworn, deposes and says:

      1.      I am a Senior Commercial Asset Consultant – Special Servicing Midland Loan Services, a division of PNC Bank, National Association ("Midland"). Midland is the Special Servicer for the trust (the "Trust", the "Lender" or the "Plaintiff") for which U.S. Bank National Association, as Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2013-C7, Commercial Mortgage Pass-Through Certificates, Series 2013-C7 is the trustee.

      2.      I am authorized by Midland as the Special Servicer for the Trust to submit this verification.

      3.      I have read the allegations contained in the foregoing Verified Complaint and they are true to my knowledge or I know of them based on my review of relevant documents, other than as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true and correct.

      I verify pursuant to 28 U.S.C. §1746 under penalty of perjury that the foregoing is true and correct.

                                               _____
                                             Cody Hilke

Dated: July 14, 2023
      St. Cloud, MN

Error! Unknown document property name.

## SCHEDULE "A"

### Legal Description

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Bronx, City, County and State of New York, known and designated on as Lot No. 20 BEGINNING at a point on the southerly side of East Fordham Road, distant 31.06 feet from the corner formed by the intersection of the southerly side of East Fordham Road with the westerly side of Tiebout Avenue, bounded and described as follows:

RUNNING THENCE westerly along the southerside of Fordham Road, 74.11 feet;

THENCE southerly and parallel with Tiebout Avenue, 96.27 feet;

THENCE easterly and at right angles to Tiebout Avenue, 74 feet;

THENCE northerly again parallel with Tiebout Avenue, 100.47 feet to the point or place of      BEGINNING.

Together with all rights, title and interest of, in and to any streets and roads abutting the above described premises, to the center line thereof.

Being the same premises conveyed to 262 East Fordham Realty LLC, a New York limited liability company, from First Sterling Corporation, deed dated February 12, 2004 and recorded March 23, 2004 in CRFN 2004000176747.

For Information Only:  Said Premises are known as 262 East Fordham Road, Bronx, New York, and designated as Section 11 Block 3148 Lot 20 as shown on the Tax Map of the City of New York, County of Bronx.

## SCHEDULE "B"

**Evolution Elevator & Escalator Corp.**

Type: Mechanic Lien
Amount: $20, 275.41
Filing Date: June 16, 2023