# EXHIBIT E

MSMCH Loan No. 12-39698

# GUARANTY OF RECOURSE OBLIGATIONS OF BORROWER

FOR VALUE RECEIVED, and to induce **MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC**, a New York limited liability company, having an address at 1585 Broadway, 10th Floor, New York, New York 10036 ("**Lender**"), to lend to **262 EAST FORDHAM REALTY LLC**, a New York limited liability company, having an address c/o Crown Acquisitions, Inc., 767 Fifth Avenue, 24th Floor, New York, New York 10153 (together with its permitted successors and assigns, "**Borrower**"), the principal sum of TWELVE MILLION TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($12,250,000.00) (the "**Loan**"), evidenced by a certain Consolidated, Amended and Restated Promissory Note, dated as of the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Note**") and a certain Loan Agreement, dated as of the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**") and secured by a certain Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Security Instrument**"), as described in <u>Exhibit A</u> attached hereto and made a part hereof, and by other documents executed in connection therewith (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Other Loan Documents**").  All capitalized terms used and not defined herein shall have the meanings attributed to such terms in the Loan Agreement.

1.      As of this 18th day of April, 2013, the undersigned, Haim Chera, an individual, having an address at c/o Crown Acquisitions, Inc., 767 Fifth Avenue, 24th Floor, New York, New York 10153 (hereinafter referred to as "**Guarantor**"), hereby absolutely and unconditionally guarantees to Lender the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower (hereinafter defined).

2.      It is expressly understood and agreed that this is a continuing guaranty and that the obligations of Guarantor hereunder are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Note, the Security Instrument, or the Other Loan Documents, a true copy of each of said documents Guarantor hereby acknowledges having received and reviewed.

3.      The term "**Debt**" as used in this Guaranty of Recourse Obligations of Borrower (this "**Guaranty**") shall mean the principal sum evidenced by the Note and secured by the Security Instrument, or so much thereof as may be outstanding from time to time, together with interest thereon at the rate of interest specified in the Note and all other sums other than principal or interest which may or shall become due and payable pursuant to the provisions of the Note, the Security Instrument or the Other Loan Documents.

4.      The term "**Guaranteed Recourse Obligations of Borrower**" as used in this Guaranty shall mean all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 11.22 of the Loan Agreement.

LEGAL_US_E # 101796483.8

5. Any indebtedness of Borrower to Guarantor now or hereafter existing (including, but not limited to, any rights to subrogation Guarantor may have as a result of any payment by Guarantor under this Guaranty), together with any interest thereon, shall be, and such indebtedness is, hereby deferred, postponed and subordinated to the prior payment in full of the Debt.  Until payment in full of the Debt (and including interest accruing on the Note after the commencement of a proceeding by or against Borrower under the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. Sections 101 et seq., and the regulations adopted and promulgated pursuant thereto (collectively, the "**Bankruptcy Code**") which interest the parties agree shall remain a claim that is prior and superior to any claim of Guarantor notwithstanding any contrary practice, custom or ruling in cases under the Bankruptcy Code generally), Guarantor agrees not to accept any payment or satisfaction of any kind of indebtedness of Borrower to Guarantor and hereby assigns such indebtedness to Lender, including the right to file proof of claim and to vote thereon in connection with any such proceeding under the Bankruptcy Code, including the right to vote on any plan of reorganization.  Further, if Guarantor shall comprise more than one person, firm or corporation, Guarantor agrees that until such payment in full of the Debt, (a) no one of them shall accept payment from the others by way of contribution on account of any payment made hereunder by such party to Lender, (b) no one of them will take any action to exercise or enforce any rights to such contribution, and (c) if any of Guarantor should receive any payment, satisfaction or security for any indebtedness of Borrower to any of Guarantor or for any contribution by the others of Guarantor for payment made hereunder by the recipient to Lender, the same shall be delivered to Lender in the form received, endorsed or assigned as may be appropriate for application on account of, or as security for, the Debt and until so delivered, shall he held in trust for Lender as security for the Debt.

6. Guarantor agrees that, with or without notice or demand, Guarantor will reimburse Lender, to the extent that such reimbursement is not made by Borrower, for all expenses (including counsel fees) actually incurred by Lender in connection with the collection of the Guaranteed Recourse Obligations of Borrower or any portion thereof or with the enforcement of this Guaranty.

7. All moneys available to Lender for application in payment or reduction of the Debt may be applied by Lender in such manner and in such amounts and at such time or times and in such order and priority as Lender may see fit to the payment or reduction of such portion of the Debt as Lender may elect.

8. Guarantor hereby waives notice of the acceptance hereof, presentment, demand for payment, protest, notice of protest, or any and all notice of non-payment, non-performance or non-observance, or other proof, or notice or demand, whereby to charge Guarantor therefor.

9. Guarantor further agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected or impaired (a) by reason of the assertion by Lender of any rights or remedies which Lender may have under or with respect to either the Note, the Security Instrument, or the Other Loan Documents, against any person obligated thereunder or against the owner of the Property (as defined in the Security Instrument), or (b) by reason of any failure to file or record any of such instruments or to take or perfect any security intended to be provided thereby, or (c) by reason of the release or exchange of any property covered by the Security Instrument or other collateral for the Loan, or (d) by reason of

Lender's failure to exercise, or delay in exercising, any such right or remedy or any right or remedy Lender may have hereunder or in respect to this Guaranty, or (e) by reason of the commencement of a case under the Bankruptcy Code by or against any person obligated under the Note, the Security Instrument or the Other Loan Documents, or the death of any Guarantor, or (f) by reason of any payment made on the Debt or any other indebtedness arising under the Note, the Security Instrument or the Other Loan Documents, whether made by Borrower or Guarantor or any other person, which is required to be refunded pursuant to any bankruptcy or insolvency law; it being understood that no payment so refunded shall be considered as a payment of any portion of the Debt, nor shall it have the effect of reducing the liability of Guarantor hereunder.  It is further understood, that if Borrower shall have taken advantage of, or be subject to the protection of, any provision in the Bankruptcy Code, the effect of which is to prevent or delay Lender from taking any remedial action against Borrower, including the exercise of any option Lender has to declare the Debt due and payable on the happening of any default or event by which under the terms of the Note, the Security Instrument or the Other Loan Documents, the Debt shall become due and payable, Lender may, as against Guarantor, nevertheless, declare the Debt due and payable and enforce any or all of its rights and remedies against Guarantor provided for herein.

10. Guarantor warrants and acknowledges that:  (a) Lender would not make the Loan but for this Guaranty; (b) there are no conditions precedent to the effectiveness of this Guaranty and this Guaranty shall be in full force and effect and binding on Guarantor regardless of whether Lender obtain other collateral or any guaranties from others or take any other action contemplated by Guarantor; (c) Guarantor has established adequate means of obtaining from sources other than Lender, on a continuing basis, financial and other information pertaining to Borrower's financial condition, the Property and Borrower's activities relating thereto, and the status of Borrower's performance of obligations under the Loan Documents, and Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder and Lender has not made any representation to Guarantor as to any such matters; (d) Reserved; (e) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein, other than in the ordinary course of Guarantor's business; and (f) Guarantor has not and will not cause or consent to any action or failure to act that would result in Borrower failing to be at all times a "single purpose entity" as described in Section 3.1.24 of the Loan Agreement.

11. So long as the Loan or any other obligation guaranteed hereby remains outstanding (other than, following the termination of the Loan Agreement and all other Loan Documents, contingent indemnification obligations as to which no claim has been made), Guarantor shall provide to Lender (i) within 90 days after the end of each fiscal year and 60 days after the end of the second fiscal quarter each year, a certified statement of Net Worth (as defined below) and Liquidity (as defined below) and with respect to such statements, each accompanied by a certificate executed by Guarantor and a report executed by a "Big Four" accounting firm or other independent certified public accountant or consulting firm reasonably acceptable to Agent (DHS & Company, Inc., or such other accounting firm reasonably acceptable to Lender that is Guarantor's primary accountant) is hereby approved by Lender as Borrower's consulting firm) ("**Approved Accountant**"), (ii) within ten (10) days after the later of (i) Lender's written request or (ii) the date such returns have been filed with the IRS or state tax authority as applicable, a

complete copy of Guarantor's federal and (to the extent applicable) state income tax returns for the immediately preceding tax year, and (iii) such other information reasonably requested by Lender and reasonably available to Guarantor.  Guarantor agrees that all financial statements to be delivered to Lender pursuant to this Section 11 shall:  (i) be audited and be complete and correct in all material respects, and with respect to semi-annually financials, be certified by Guarantor; (ii) disclose all guarantees, mortgages and other liabilities, contingent or otherwise; and (iii) be prepared (A) in hardcopy and electronic formats and (B) in accordance with fair value GAAP accounting (exclusive of deferred tax liabilities) or in accordance with other methods acceptable to Lender in its reasonable discretion (consistently applied).  Guarantor agrees that all financial statements shall not contain any misrepresentation or omission of a material fact which would make such financial statements inaccurate, incomplete or otherwise misleading in any material respect.

Furthermore, each legal entity obligated on this Guaranty hereby authorizes Lender to order and obtain, from a credit reporting agency of Lender's choice, a third party credit report on such legal entity.

12. Guarantor further covenants that this Guaranty shall remain and continue in full force and effect as to any modification, extension or renewal of the Note, the Security Instrument, or any of the Other Loan Documents, that Lender shall not be under a duty to protect, secure or insure any security or lien provided by the Security Instrument or other such collateral, and that other indulgences or forbearance may be granted under any or all of such documents, all of which may be made, done or suffered without notice to, or further consent of, Guarantor.  Notwithstanding anything to the contrary contained herein or any of the other Loan Documents, in no event shall an exercise of remedies by the provider of the preferred equity described in Section 8.2(a) of the Loan Agreement (including, without limitation, a change of control) in any way affect the obligations of Guarantor hereunder and this Guaranty shall remain in full force and effect thereafter.

13. This is a guaranty of payment and not of collection and upon the Guaranteed Recourse Obligations of Borrower not being paid when due or upon any default of Borrower under the Note, the Security Instrument or the Other Loan Documents, Lender may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of the liability hereunder or any portion thereof, without proceeding against Borrower or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying against any of the mortgaged property or other collateral for the Loan.  Guarantor hereby waives the pleading of any statute of limitations as a defense to the obligation hereunder.

14. Each reference herein to Lender shall be deemed to include its successors and assigns, to whose favor the provisions of this Guaranty shall also inure.  Each reference herein to Guarantor shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of Guarantor, all of whom shall be bound by the provisions of this Guaranty.

15. If any party hereto shall be a partnership, the agreements and obligations on the part of Guarantor herein contained shall remain in force and application notwithstanding any changes in the individuals composing the partnership and the term "Guarantor" shall include any

altered or successive partnerships but the predecessor partnerships and their partners shall not thereby be released from any obligations or liability hereunder.

16.     Guarantor (and its representative, executing below, if any) has full power, authority and legal right to execute this Guaranty and to perform all its obligations under this Guaranty.

17.     All understandings, representations and agreements heretofore had with respect to this Guaranty are merged into this Guaranty which alone fully and completely expresses the agreement of Guarantor and Lender.

18.     This Guaranty may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement of Guaranty.  The failure of any party hereto to execute this Guaranty, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

19.     This Guaranty may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Lender or Borrower, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

20.     In the event that pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law or any judgment, order or decision thereunder, Lender must rescind or restore any payment or any part thereof received by Lender in satisfaction of the Guaranteed Recourse Obligations of Borrower, as set forth herein, any prior release or discharge from the terms of this Guaranty given to Guarantor by Lender shall be without effect and this Guaranty shall remain in full force and effect.  It is the intention of Borrower and Guarantor that Guarantor's obligations hereunder shall not be discharged except by Guarantor's performance of such obligations and then only to the extent of such performance.

21.     This Guaranty shall be deemed to be a contract entered into pursuant to the laws of the State of New York and shall in all respects be governed, construed, applied and enforced in accordance with applicable federal law and the laws of the State of New York, without reference or giving effect to any choice of law doctrine.

22.     As a further inducement to Lender to enter into the Loan Documents and the Loan Agreement and in consideration thereof, Guarantor further covenants and agrees (a) that in any action or proceeding brought by Lender against Guarantor on this Guaranty, Guarantor shall and does hereby waive trial by jury, (b) Guarantor will maintain a place of business or an agent for service of process in New York and give prompt notice to Lender of the address of such place of business and of the name and address of any new agent appointed by it, as appropriate, (c) the failure of Guarantor's agent for service of process to give it notice of any service of process will not impair or affect the validity of such service or of any judgment based thereon, (d) if, despite the foregoing, there is for any reason no agent for service of process of Guarantor available to be served, and if Guarantor at that time has no place of business in the State of New York then Guarantor irrevocably consents to service of process by registered or certified mail, postage

prepaid, to it at its address given in or pursuant to the first paragraph hereof, Guarantor hereby waiving personal service thereof, (e) that within thirty days after such mailing, Guarantor so served shall appear or answer to any summons and complaint or other process and should Guarantor so served fail to appear or answer within said thirty-day period, said Guarantor shall be deemed in default and judgment may be entered by Lender against the said party for the amount as demanded in any summons and complaint or other process so served, (f) Guarantor initially and irrevocably designates Morris Missry, c/o Wachtel Masyr & Missry LLP, with offices on the date hereof at One Dag Hammarskjold Plaza, 885 Second Avenue, 47th Floor, New York, New York 10017 to receive for and on behalf of Guarantor service of process in the State of New York with respect to this Guaranty, (g) with respect to any claim or action arising hereunder, Guarantor (i) irrevocably submits to the nonexclusive jurisdiction of the courts of the State where the Property is located and the United States District Court located in the county in which the Property is located, and appellate courts from any thereof, and (ii) irrevocably waives any objection which it may have at any time to the laying on venue of any suit, action or proceeding arising out of or relating to this Guaranty brought in any such court, irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum, and (h) nothing in this Guaranty will be deemed to preclude Lender from bringing an action or proceeding with respect hereto in any other jurisdiction.

      23.    Guarantor (and its representative, executing below, if any) hereby warrants, represents and covenants to Lender that:

      (a)    Provided Guarantor is not a natural person, Guarantor is duly organized and existing and in good standing under the laws of the state in which such entity is organized. Provided Guarantor is not a natural person, Guarantor is currently qualified or licensed (as applicable) and shall remain qualified or licensed to do business in each jurisdiction in which the nature of its business requires it to be so qualified or licensed.

      (b)    Provided Guarantor is not a natural person, the execution and delivery of the Guaranty has been duly authorized and the Loan Documents constitute valid and binding obligations of Guarantor or the party which executed the same, enforceable in accordance with their respective terms, except as such enforcement may be limited by bankruptcy, insolvency, moratorium or other laws affecting the enforcement of creditors' rights, or by the application of rules of equity.

      (c)    The execution, delivery and performance by Guarantor of each of the Loan Documents do not violate any provision of any law or regulation, or result in any breach or default under any contract, obligation, indenture or other instrument to which Guarantor is a party or by which Guarantor is bound.

      (d)    There are no pending or, to Guarantor's knowledge, threatened actions, claims, investigations, suits or proceedings before any governmental authority, court or administrative agency which materially affect the financial condition or operations of Borrower and/or the Property.

      (e)    The financial statements of Guarantor previously delivered by Guarantor to Lender: (i) are complete and correct, (ii) present fairly the financial condition of such party and

(iii) have been prepared in accordance with the same accounting standard used by Guarantor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan, or other accounting standards approved by Lender.  Since the date of such financial statements, there has been no material adverse change in such financial condition, nor have any assets or properties reflected on such financial statements been sold, transferred, assigned, mortgaged, pledged or encumbered, except as previously disclosed in writing by Guarantor to Lender and approved in writing by Lender.

(f)     There are no pending assessments or adjustments of Guarantor's income tax payable with respect to any year.

(g)     None of the transactions contemplated by the Loan Documents will be or have been made with an actual intent to hinder, delay or defraud any present or future creditors of Borrower or Guarantor, and Borrower and Guarantor, on the date hereof, will have received fair and reasonably equivalent value in good faith for the continued grant of the liens or security interests effected by the Loan Documents.  As of the date hereof, Borrower and Guarantor are solvent and will not be rendered insolvent by the transactions contemplated by the Loan Documents.  As of the date hereof, Borrower and Guarantor are able to pay their respective debts as they become due.

(h)     Guarantor shall promptly notify Lender in writing of any litigation pending or threatened against Guarantor or any entity controlled by Guarantor (which comprises a portion of Guarantor's Net Worth) claiming damages in excess of Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00) and of all pending or threatened litigation against Guarantor or any such entity if the aggregate damage claims against Guarantor or any such entity exceed Five Hundred Thousand and No/100 Dollars ($500,000.00).

(i)     Guarantor shall keep and maintain or will cause to be kept and maintained proper and accurate books and records reflecting the financial affairs of Guarantor.  One time per calendar year in addition to any time during the continuance of an Event of Default, Lender shall have the right during normal business hours upon reasonable notice to Guarantor to examine such books and records at the office of Guarantor or other Person maintaining such books and records and to make such copies or extracts thereof as Lender shall desire.

(j)     Guarantor shall at all times maintain a Net Worth in an amount not less than Ten Million and No/100 Dollars ($10,000,000.00) and Liquidity in an amount not less than One Million and No/100 ($1,000,000.00), each tested semi-annually.

For the purposes hereof, the term "**Net Worth**" shall mean a Person's equity calculated in accordance with fair value GAAP accounting as its total assets (exclusive of such Person's interest in the Property) *minus* its total liabilities (exclusive of deferred tax liabilities).

For the purposes hereof, the term "**Liquidity**" shall mean the portion of a Person's total assets that is comprised of Cash and Cash Equivalents.

For the purposes hereof, the term "**Cash and Cash Equivalents**" shall mean all unrestricted or unencumbered (A) cash and (B) any of the following: (i) marketable direct obligations issued or unconditionally guaranteed by the United States Government or issued by an agency thereof and

backed by the full faith and credit of the United States; (ii) marketable direct obligations issued by any state of the United States of America or any political subdivision of any such state or any public instrumentality thereof which, at the time of acquisition, has one of the two highest ratings obtainable from any two (2) of Standard & Poor's Corporation, Moody's Investors Service, Inc. or Fitch Investors (or, if at any time no two of the foregoing shall be rating such obligations, then from such other nationally recognized rating services as may be acceptable to Lender) and is not listed for possible down-grade in any publication of any of the foregoing rating services; (iii) domestic certificates of deposit or domestic time deposits or repurchase agreements issued by any commercial bank organized under the laws of the United States of America or any state thereof or the District of Columbia having combined capital and surplus of not less than $1,000,000,000.00, which commercial bank has a rating of at least either AA or such comparable rating from Standard & Poor's Corporation or Moody's Investors Service, Inc., respectively; (iv) unencumbered, marketable debt securities issued by one or more issuers that are rated at least BBB- (or its equivalent) by each of the Rating Agencies that rate such securities; (v) any unrestricted stock, shares, certificates, bonds, debentures, notes or other instrument which constitutes a "security" under the Security Act of 1933 (other than of Guarantor, Borrower and/or any of their affiliates) which are freely tradable on any nationally recognized securities exchange and are not otherwise encumbered by Guarantor; and (vi) investments in funds (e.g. hedge funds, investment funds or private equity funds) in which Guarantor serves directly or indirectly as a general partner or managing member and has the right (without the consent of any partners, members, shareholders, directors, officers, lenders or other Persons or satisfaction of preconditions) to redeem such investments in cash at any time within three (3) Business Days, provided such investments otherwise qualify as Cash or Cash Equivalents under clauses (i) - (v) of this definition.

24.     All notices, demands, requests, consents, approvals or other communications (any of the foregoing, a "**Notice**") required, permitted, or desired to be given hereunder shall be in writing sent by telefax (with answer back acknowledged) or by registered or certified mail, postage prepaid, return receipt requested, or delivered by hand or reputable overnight courier addressed to the party to be so notified at its address hereinafter set forth, or to such other address as such party may hereafter specify in accordance with the provisions of this Section 24. Any Notice shall be deemed to have been received: (a) three (3) days after the date such Notice is mailed by regular or certified mail, (b) on the date of sending by telefax if sent during business hours on a Business Day (otherwise on the next Business Day) upon confirmation of such transmission, (c) on the date of delivery by hand if actually received during business hours on a Business Day (otherwise on the next Business Day), and (d) on the next Business Day if sent by an overnight commercial courier, in each case addressed to the parties as follows:

If to Lender:

Morgan Stanley Mortgage Capital Holdings LLC,
1585 Broadway, Floor 10
New York, New York 10036
Attention: James Flaum
Facsimile No.: (212) 507-4139

with a copy to:

    Paul Hastings LLP
    75 East 55th Street
    New York, New York 10022
    Attention: Eric F. Allendorf, Esq.
    Facsimile No.: (212) 230-5173

If to Guarantor:

    Haim Chera
    c/o Crown Acquisitions, Inc.
    767 Fifth Avenue, 24th Floor
    New York, New York 10153
    Facsimile No.: (646) 412-1869

with a copy to:

    Wachtel Masyr & Missry LLP
    One Dag Hammarskjold Plaza
    885 Second Avenue, 47th Floor
    New York, New York 10017
    Attention: Morris Missry, Esq.
    Facsimile No.: (212) 909-9448

      25.    Guarantor shall have no liability for any Guaranteed Recourse Obligations or other obligations hereunder in connection with events, acts or omissions first arising or occurring after the foreclosure of the Security Instrument or a deed in lieu thereof as contemplated by the Loan Agreement. This Guaranty shall terminate upon the satisfaction of the Debt in full.

**[NO FURTHER TEXT ON THIS PAGE]**

IN WITNESS WHEREOF, Guarantor has duly executed this Guaranty as of the day and year first above written.

**GUARANTOR:**

HAIM CHERA

_____

## EXHIBIT A

## (DESCRIPTION OF NOTE, LOAN AGREEMENT AND SECURITY INSTRUMENT)

1. Consolidated, Amended and Restated Promissory Note dated as of April 18, 2013, by Borrower in favor of Lender in the principal amount of the Loan.

2. Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of April 18, 2013, by Borrower in favor of Lender.

3. Loan Agreement, dated as of April 18, 2013, by and between Borrower and Lender.

LEGAL_US_E # 101796483.8